IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BRIDGETT C. ALEXANDER                                                                       PLAINTIFF

v.                                                                   CIVIL ACTION NO. 1:23-cv-00101-SA-DAS

HERNAN SANCHEZ TREJO                                                                       DEFENDANT

ORDER AND MEMORANDUM OPINION

On June 8, 2023, Bridgett C. Alexander initiated this civil action by filing her Complaint [2] against Hernan Sanchez Trejo in the Circuit Court of Lowndes County, Mississippi. On August 4, 2023, Sanchez filed a Notice of Removal [1], removing the action to this Court on diversity grounds. Thereafter, Sanchez filed a Motion to Dismiss [18] both of Alexander's claims. The Motion [18] has been fully briefed and is now ripe for review.

*Relevant Background*

According to the Complaint [2], Alexander was employed at Baptist Memorial Hospital-GTR as the Director of Inpatient Nursing and Sanchez was a physician with practicing privileges at the same facility. Alexander has various advanced degrees in nursing, including a Doctor of Nursing Practice (DNP). The Complaint [2] alleges that on April 17, 2023, Alexander was wearing a uniform that carried the designation of "Doctor Alexander." While the parties were near a nursing station that morning, the following exchange allegedly occurred:

    Sanchez: Who is Dr. Alexander?

    Alexander: I'm Dr. Alexander.

    Sanchez: Who did you sleep with to get that title?

    Alexander: Excuse me, what did you say to me?

    Sanchez: Who did you sleep with to get that title?

[2] at p. 2.

Alexander alleges that at least three of the parties' co-workers were present and heard the exchange. In her Complaint [2], Alexander asserts claims for defamation and intentional infliction of emotional distress. Alexander alleges that she incurred damages in the form of medical expenses and lost future wages and that she suffered emotional distress due to anxiety, reduction of pleasure in her work, and being held up for ridicule.

*Applicable Standard*

Rule 12(b)(6) allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

"This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citing *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008)). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). Still, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

2

*Analysis and Discussion*

As noted, Alexander brings claims for defamation and intentional infliction of emotional distress.[1] The Court will address them in turn.

I. *Defamation*

Defamation is "that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001) (quoting PROSSER & KEETON ON THE LAW OF TORTS § 111, at 771 (5th ed.1984)). Slander is the spoken form of the general tort of defamation. *Id.* at 631. To prove slander under Mississippi law, the following elements must be shown:

> (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) actionability of the statement irrespective of special harm *or* the existence of special harm caused by the publication.

*Okoloise v. Yost*, 283 So. 3d 49, 59-60 (Miss. 2019). Sanchez's arguments concern the first and fourth elements of this claim. The Court will address each argument separately.

A. *Defamatory Statement*

Under Mississippi law, the trial court in a defamation case must make the threshold determination of whether the language in question is actionable. *Brewer v. Memphis Pub. Co.*, 626 F.2d 1238, 1245 (5th Cir. 1980); *Hayne v. The Innocence Project*, 2011 WL 196128, at *2 (S.D. Miss. Jan. 20, 2011); *Mitchell v. Random House, Inc.*, 703 F. Supp. 1250, 1258 n.10 (S.D. Miss. 1988) ("a libel action lends itself to judicial scrutiny in the early stages of a defamation lawsuit").

---

[1] In his Motion [18], Sanchez argues that Alexander's Complaint [2] includes allegations arguably invoking Title VII. Sanchez moves the Court to dismiss such a claim to the extent it is pled. In her Response [26], Alexander asserts that she is not making any claim under Title VII. Thus, the Court sees no need to address the portion of Sanchez's Motion [18] pertaining to Title VII.

Courts considering a motion to dismiss a defamation claim "routinely" address "issues such as whether the statement at bar is capable of a defamatory meaning." *Mitchell*, 703 F. Supp. at 1258 n. 10. In the context of defamation, the Court must consider "[t]he said-to-be-offending words. . . in the context of the entire utterance. Their complexion draws color from the whole." *Lawrence v. Evans*, 573 So. 2d 695, 698 (Miss. 1990).

In his Motion [18], Sanchez argues that this claim should be dismissed under the rationale of *Ferguson v. Watkins*, 448 So. 2d 271 (Miss. 1984). The Mississippi Supreme Court in *Ferguson* established a restriction to the general defamation rule: "the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture." *Ferguson*, 448 So.2d at 275. If the hearer "must struggle to see how and whether they defame, by definition the words are not defamatory in law. Words which may be found defamatory only with the aid of a most vivid imagination are not actionable." *Lawrence*, 573 So.2d at 698.

In *Ferguson*, the Mississippi Supreme Court held that a statement in a newspaper editorial that taxpayers were being "rake[d] over the coals" in the context of the plaintiff doctors' employment structure within a publicly funded hospital were not libelous. *Ferguson*, 448 So.2d at 276. The Supreme Court explained that the statement was not necessarily directed at the plaintiffs but instead to the government officials who approved the plaintiff doctors' salaries. *Id.* Further, the plaintiffs contended that another editorial comment describing their employment structure as "very lucrative" was libelous and this too was rejected by the Supreme Court. *Id.* As to this statement, the Court opined that it suggested that doctors' fees are high, which is a widely held objective belief that is not libelous. *Id*.

Here, the Complaint [2] alleges that Sanchez asked Alexander, "Who did you sleep with to get that title?" Sanchez argues that his statement is not actionable defamation because it cannot be

4

attributed a defamatory meaning absent "speculation and conjecture." [19] at p. 4. Alexander's Complaint [2] asserts that Sanchez's statement conveyed that "she was unskilled and obtained the Doctorate not by hard work and training but by providing sexual favors to others." [2] at p. 2. The Court agrees. In *Ferguson*, the Mississippi Supreme Court looked to the clear suggestion of the words in making its determination. 448 So.2d at 275-76. While speculation was needed for the words to be attributed a defamatory meaning in *Ferguson*, the same is not the case here. In the case *sub judice,* the words are direct and clearly suggest that Alexander slept her way into obtaining her Doctor title. A jury could plausibly reach this conclusion without speculation. Alexander has sufficiently pled a defamatory statement.

  B. *Special Harm*

As noted above, Sanchez also argues that Alexander cannot satisfy the fourth element— the existence of special harm. For slanderous statements to be actionable, plaintiffs must prove that either (a) they experienced "special harm," which is "the loss of something having economic or pecuniary value" or (b) that defendant's actions constituted slander *per se. Speed*, 787 So. 2d at 632. Slander *per se* does not require proof of special damages because "the law presumes that one who has been defamed in certain ways has necessarily suffered damage arising from his wounded feelings and diminished reputation." *Cook v. Wallot*, 172 So. 3d 788, 798 (Miss. Ct. App. 2013) (quoting *McFadden v. U.S. Fid. & Guar. Co.,* 766 So.2d 20, 23 (Miss. Ct. App. 2000). There are five categories under which a statement may constitute slander *per se* in Mississippi. *Speed,* 787 So.2d at 632. Relevant to this case, the Mississippi Supreme Court has recognized that words are slanderous *per se* when they "impute a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business." *Id.*

Sanchez argues that Alexander's Complaint [2] is void of facts demonstrating that she suffered special harm. [19] at p. 5. Specifically, he argues that she fails to allege sufferance of any adverse employment action or harm to her reputation as a result of Sanchez's statement. *Id.*; [28] at p. 2. Alexander's Complaint [2] alleges that she suffered economic damages in the form of medical expenses and lost future wages. In her Response [26], Alexander additionally contends that she need not show special harm because the statement is actionable slander *per se*.

The Court looks to recent Mississippi caselaw to determine whether Sanchez's statement is capable of being *per se* actionable. In *Fagan v. Faulkner*, the Mississippi Court of Appeals reviewed a similar issue where a physician was sued by a clinical manager after he called her a "f--ing c-nt" in the presence of others at the medical facility where they both worked. --- So. 3d ---, 2023 WL 2884538 (Miss. Ct. App. Apr. 11, 2023), *cert. granted*, 373 So. 3d 540 (Miss. 2023). In essence, the court found Dr. Fagan's statement to be unactionable name-calling and reversed the trial court's finding that the words constituted slander *per se* made in the context of Faulkner's job performance. *Id*. at *7.

Sanchez argues that his statement was merely a "caustic comment" that does not fall into any category of slander *per se*. [19] at p. 4. In response, Alexander relies on *Fagan* and argues that the words in context clearly mean that she was incompetent and undeserving of the Doctor title. While *Fagan* is, to some extent, factually similar to the instant case, here the Court is not confronted with one or two expletive words that may amount to name-calling. As noted, statements are not considered actionable *per se* merely because they impute a want of integrity, but rather such a lack of integrity must be related to "the conduct of a [plaintiff's] profession, trade or business." *Speed,* 787 So.2d at 632. That is where the distinction between *Fagan* and this case lies.

6

The alleged statement at issue here could pertain to the manner in which Alexander conducted herself professionally.

Additionally, in *McFadden*, the Mississippi Court of Appeals held that the terms "crackpot" and "quack" were actionable *per se* because they were intended to disparage the plaintiff doctor's professional abilities in the context of the conversation in which they were said. *McFadden,* 766 So.2d at 24. In that case, an insurance adjuster used these words to describe Dr. McFadden when speaking to a claimant about her injuries and the medical treatment she received from Dr. McFadden. *Id*. at 21. The Court explained that the insurance adjuster "necessarily intended to disparage McFadden's abilities as a practicing physician and [the remarks] would tend to hold McFadden up to ridicule and embarrassment in the specific area of his professional life." *Id*. at 24.

Here, like in *McFadden*, the context in which Sanchez made the alleged statement to Alexander is notable. Sanchez made the statement to Alexander while they were both at work near a nursing station where other staff was present, and the statement was prompted by the title designation on Alexander's uniform. A reasonable jury could conclude that asking someone who they slept with to obtain the title delineated on their scrubs means that person obtained the title by conducting themselves dishonorably in their profession. Although the Court in *McFadden* looked to the dictionary meaning of the words "crackpot" and "quack," a definition is not needed here to ascertain that Sanchez intended to discredit Alexander in her professional setting in making the statement to her. Like the plaintiff in *McFadden*, the statement here could tend to hold Alexander up to ridicule and embarrassment in her profession given the context in which it was spoken. Therefore, the Court finds that Alexander has plausibly stated a claim for defamation.

## II. Intentional Infliction of Emotional Distress

Under Mississippi law, to set forth a prima facie claim for intentional infliction of emotional distress, a plaintiff "must show that (i) the defendants acted 'willfully and wantonly' towards them, (ii) that the defendants['] actions would 'evoke outrage or revulsion in civilized society', (iii) that the actions were 'directed at or intended to cause harm' to the [plaintiff], (iv) that the [plaintiff] 'suffered severe emotional distress as a direct result' of defendant[s'] actions and (v) that the 'resulting emotional distress was foreseeable from the intentional act/acts.'" *Brown v. ESAB Grp., Inc.*, 2023 WL 2656755 (S.D. Miss. Mar. 27, 2023) (citing *J. R. ex rel. R.R. v. Malley*, 62 So.3d 902, 906 (Miss. 2011)). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013).

A claim for intentional infliction of emotional distress is difficult to prove, as the Fifth Circuit has explained:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*

*Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 548 (5th Cir. 1996) (citation and quotation marks omitted; emphasis in original). In *Speed v. Scott*, a fire chief's statements repeatedly referring to a fireman as a "liar" and a "thief" were not sufficiently outrageous or extreme to establish claim for intentional infliction of emotional distress. 787 So.2d at 630. The Mississippi Supreme Court

8

explained that the conduct "was over a fairly short period of time [and] arose from the disagreements between two men and perhaps fears about the [chief's] career longevity." *Id.* at 631. The Court concluded that "Speed's conduct simply cannot be seen as intolerable, outrageous or revolting." *Id.*

In her Complaint [2], Alexander provides one statement in support of her claim: "The comments were intended and did inflict emotional distress." [2] at p. 2. In her Response [26], she argues that "the conduct exceeds all possible bounds of reasonable conduct, and when the wrongful or reckless conduct traumatizes the victim, it becomes a question for the jury," but she provides no legal citations in support of her argument. [26] at p. 4-5. Notably, the Complaint [2] does not allege that Alexander suffered *severe* emotional distress or that her alleged emotional distress was foreseeable from Sanchez's statement. Overall, the Complaint's [2] single conclusory allegation, lacking in factual support, fails to state a plausible claim for intentional infliction of emotional distress. *See Alston v. Mississippi Dep't of Emp. Sec.*, 300 So. 3d 543 (Miss. Ct. App. 2020) (dismissing IIED claim as conclusory where no facts as to emotional distress were pled). !

Even taking the conclusory allegation into consideration, the Court finds that Alexander has failed to state a claim. Here, although the statement was repeated twice, it was uttered on only one occasion. Unlike in *Speed*, the communications between Alexander and Sanchez did not persist over time. Alexander's allegations do not meet the tall order of alleging a claim for intentional infliction of emotional distress. S*ee, e.g., Jones v. Tyson Foods, Inc.,*4:10cv11, 971 F.Supp.2d 632, 642, 2013 WL 4876373, at *7 (N.D. Miss. Sept. 11, 2013) ("Conduct that rises to the level of nervewracking, upsetting, and even improper is not enough to reach the level of extreme and outrageous conduct required for recovery for intentional infliction of emotional distress.").

9

*Conclusion*

For the reasons set forth above, the Motion to Dismiss [18] is GRANTED in part and DENIED in part. Alexander's claim for intentional infliction of emotional distress is dismissed *with prejudice*. She may proceed on her defamation claim. The previously-imposed stay is hereby LIFTED. The Magistrate Judge will hold a conference and set the appropriate deadlines associated with the case.

SO ORDERED, this the 23rd day of September, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE