IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BRIDGETT C. ALEXANDER                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 1:23-cv-101-SA-DAS

HERNAN SANCHEZ TREJO                                                    DEFENDANT

ORDER AND MEMORANDUM OPINION

On June 8, 2023, Bridgett C. Alexander initiated this civil action by filing her Complaint [2] against Hernan Sanchez Trejo in the Circuit Court of Lowndes County, Mississippi. Sanchez removed the case to this Court on August 4, 2023, premising jurisdiction on diversity of citizenship. The Complaint [2] brings state law claims for defamation and intentional infliction of emotional distress. On September 23, 2024, the Court entered an Order [36] dismissing Alexander's intentional infliction of emotional distress claim and allowing the defamation claim to proceed.

Now before the Court is Sanchez's Motion for Summary Judgment [80] wherein he requests dismissal of the remaining defamation claim. The Motion [80] has been fully briefed and is ripe for review. The Court is prepared to rule.

*Relevant Background*

During the relevant time period, Alexander was the Director of Inpatient Nursing at Baptist Memorial Hospital-Golden Triangle ("Baptist") located in Columbus, Mississippi. She has a Doctorate of Nursing Practice degree and is also a registered nurse.

Sanchez was also employed at Baptist as a colorectal surgeon and held a Mississippi medical license at that time. He is a native of Peru and is fluent in both English and Spanish. Over

the course of working for the same employer, Alexander and Sanchez occasionally crossed paths on the hospital floor while carrying out their respective employment duties.

On April 17, 2023, as he finished his morning rounds on the 5th floor of the hospital, Sanchez approached the nursing station to talk to the charge nurse, Egan Monroe. While he stood there, Alexander approached the nursing station and asked Sanchez if he needed any assistance to which he replied in the negative. At that point, Sanchez noticed that Alexander's scrubs said "Dr. Alexander" followed by some letters. [80], Ex. 1 at p. 59. He then asked Alexander who "Dr. Alexander" was because, according to him, he did not recognize the name. *Id.* According to the parties' respective written statements submitted to their employer, Alexander replied to Sanchez indicating that she was "Dr. Alexander." *See* [84], Ex. 2 at p. 1; [80], Ex. 5 at p. 1.[1]

After Alexander responded to that initial question, Sanchez asked her another question, which is the crux of Alexander's defamation claim. Notably, the parties dispute the exact words that Sanchez uttered next. During her deposition, Alexander testified that Sanchez then asked her "[w]ho did you sleep with to get your title, your degree?" [80], Ex. 3 at p. 61.[2] For his part, Sanchez testified that he asked her "who do you sleep with?" *Id.*, Ex. 1 at p. 60, 66. He further testified that he was conveying the Spanish phrase "Con quién dormiste," which, according to him, means "Who do you sleep with?" and carries no sexual connotation as understood in the Spanish language and Peruvian culture. [80], Ex. 1 at p. 65, 117.

It is undisputed that, following Sanchez's question, Alexander appeared upset and explained that she had worked hard to obtain her degrees, including her Doctorate, and that

---

[1] The Court notes that during his deposition, Sanchez initially testified that Alexander had replied saying "I'm sorry?" and later testified that she had replied "I didn't understand." [80], Ex. 1 at p. 60, 71.

[2] According to Alexander, she then replied "Excuse me. What did you say?" which prompted Sanchez to repeat the question. *Id.* at 61-62.

2

Sanchez promptly apologized. Three nurses witnessed the exchange, namely, Egan Monroe, Kierra Nicholson, and Christy Cunningham.

Later that same day, Alexander complained of the interaction with Sanchez to Baptist's Chief Nursing Officer, Alicia Grant. During the conversation, Grant called other administrators into her office, including Jenni Gordman, the Human Resources Director at Baptist, and Sanchez's direct supervisor, Janet Cranford. Alexander testified that she was unable to finish her shift as a result of her interaction with Sanchez and that she had to call her husband to pick her up from work because she was unable to drive.

Cranford then contacted Sanchez about Alexander's complaint, and Sanchez explained his version of the interaction. He also wrote an apology letter to Alexander that Cranford delivered via email. Alexander, Sanchez, and the three nurses were asked to submit written statements about the occurrence to the Human Resources Department.[3]

Regarding the three nurses who witnessed the interaction, only Monroe submitted a written statement via email. She explained that Sanchez "noticed [Alexander's] scrubs with the embroidery and jokingly asked 'Dr. Alexander, who is that? Who did you sleep with?'" *Id.*, Ex. 7 at p. 1. Monroe also stated that none of the nurses "took it as anything other than a joke." *Id.* However, none of the nurses were deposed in this case.

Ultimately, Sanchez took the position at his deposition that "[i]t was all a misunderstanding." *Id.*, Ex. 1 at p. 121. According to him, "[t]he Spanish saying that [he] had tried to translate… to English, had backfired terribly." *Id.* at p. 120. Baptist issued Sanchez a Final Written Warning on May 4, 2023, which included a memorandum of understanding signed by him.

---

[3] Sanchez wrote his statement with the assistance of his wife who is an immigration attorney. At the time of this occurrence, Sanchez was a visa holder. During his deposition, he explained that losing his job would affect his immigration status.

The memorandum addressed Alexander's complaint and explained that "any interactions or communications of sexual/inappropriate nature, regardless of [] intent, are not acceptable in the workplace." [84], Ex. 6 at p. 2.[4] Sanchez has since left Baptist and is now employed with Laredo Physicians Group in Laredo, Texas.

Alexander testified that she has experienced severe mental distress as a result of her interaction with Sanchez on April 17, 2023. She sought medical treatment after that date, was prescribed sleep and anxiety medication, and has seen a therapist. Sometime thereafter, she voluntarily transitioned into a lateral role with Baptist, which did not involve much interaction with physicians. In her sworn Affidavit, Alexander states that she would not have made this lateral move had the interaction with Sanchez not occurred. Nonetheless, her salary remained the same.

Alexander's sole remaining claim against Sanchez is one for defamation. Through his Motion [80], Sanchez seeks dismissal of the claim. Alexander opposes the same.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at \*1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the

---

[4] The memorandum also cited a prior and unrelated incident involving Sanchez that resulted in him receiving a verbal reprimand.

absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*[5]

As noted, the sole claim remaining is Alexander's defamation claim. In his Motion [80], Sanchez argues that the claim should be dismissed, and this case effectively closed, because no issues of material fact exist and the claim fails as a matter of law.

"Defamation is that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against [her]." *Fagan v. Faulkner*, 396 So. 3d 1112, 1117 (Miss. 2024) (quoting *Barmada v. Pridjian*, 989 So. 2d 359, 362 (Miss. 2008)) (internal quotation marks omitted). In Mississippi, there are "twin torts" under the defamation umbrella,

---

[5] The Court notes that Mississippi law applies because this action is before the Court on the basis of diversity jurisdiction. *See, e.g., Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

including "libel for written defamations and slander for oral ones." *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001). Alexander advances a claim for slander in this case.

To prove slander under Mississippi law, the following elements must be shown: "[1] a false statement that has the capacity to injure the plaintiff's reputation; [2] an unprivileged publication, i.e., communication to a third party; [3] negligence or greater fault on the part of the publisher; and [4] either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Fagan*, 396 So. 3d at 1117 (citing *Speed*, 787 So. 2d at 631); *Dollar Gen. Corp. v. Dobbs*, 409 So. 3d 569, 573 (Miss. 2025).[6] Sanchez's arguments concern the first, second, and fourth elements of this claim. The Court will address each argument separately.[7]

A.  *Defamatory Statement*

At the outset, the Court reiterates that the parties dispute the exact phrase Sanchez uttered, which forms the basis of Alexander's claim. On one hand, Alexander testified that Sanchez asked her "[w]ho did you sleep with to get your title, your degree?" [80], Ex. 3 at p. 61. She contends that Sanchez repeated the question after she replied "Excuse me. What did you say?" *Id.* at p. 61-62.

On the other hand, Sanchez claims that he asked "Who did you sleep with?" [84], Ex. 6 at p. 3. During his deposition, Sanchez testified as follows:

> Q.      … So I've read your report that you've provided to Baptist; but I want you, as you sit here today, to tell me what you recall from April 17th of '23 when you interacted with Dr. Alexander.

---

[6] "When the defamation is actionable 'irrespective of special harm,' it is called defamation per se." *Asbury Auto. Grp., Inc. v. Gooding*, 2021 WL 3572669, at *4 (S.D. Miss. Aug. 11, 2021) (quoting *McFadden v. U.S. Fid. & Guar. Co.*, 766 So. 2d 20, 23-24 (Miss. Ct. App. 2000)).

[7] The Court notes that Alexander raises some argument pertaining to the third element in her Response Memorandum [85], but, because Sanchez does not request summary judgment on the basis of that element, the Court need not address those arguments.

A.    So I was making my morning rounds, and I was finishing my patients, and I went to talk to the charge nurse. And I remember it was Egan, Nurse Egan.

Q.    Okay.

A.    And then we started, like, some small talk there. And then -- you know, like, Nurse Bridgett [Alexander] came to -- she said -- she was very nice. Hey, Dr. Sanchez, how can we help you? Do you need assistance? She was always, like, nice to me. And I looked back to her and say, No, no thank you.

And then I noticed that she was -- you know, she had this scrub that she was wearing where there was a -- stated, like, medical degree, Dr. Alexander.

And, you know, by then I've been working at Baptist for a couple of years now, and I kind of know the medical community. So I was like, Oh, who's this Dr. Alexander? So I was a little bit confused.

And I -- I asked, Hey, who's Dr. Alexander? And she was like, I'm sorry? Like, Who is Dr. Alexander? And she goes, What?

And because, once again, you know, I said, like, No, like, who do you sleep with? And then I -- like, I was pointing at my garment, like -- you know, and saying, like, Who do you live with?

In Spanish there is no sexual connotation. I learned after this event that, unfortunately, it can be taken that way. And that's when she got upset.

[80], Ex. 1 at p. 58-60.

In his Memorandum [81], Sanchez seemingly acknowledges that a difference exists in the parties' respective versions of his question. However, the Court notes that, in arguing that his question was not defamatory, Sanchez only references the question generally as "Sanchez's question" without specifying which version of the question he is referring to. *See* [81] at p. 4-5, 7. In opposing summary judgment, Alexander argues that a question of material fact exists as to the

exact question Sanchez asked given the parties' differing versions. The Court notes that, in his Reply [88], Sanchez acknowledges that "[Alexander] lists… genuine issues of material fact…[, including] what statements were actually made by Dr. Sanchez[,]" but he does not substantively counter that argument. [88] at p. 4. Following that acknowledgment, Sanchez merely argues, in conclusory fashion, that "[n]ot one of these alleged factual disputes involves any material fact." *Id.* The Court disagrees.

Certainly, a question of material fact exists if at least one of the two versions of Sanchez's question to Alexander could constitute defamation. Again, it is not clear which version of his question Sanchez contends is not defamatory as a matter of law. For example, in his Memorandum [81], Sanchez references this Court's prior ruling in this case at the motion to dismiss stage in which it analyzed Alexander's version of the question. In this regard, he raises the following argument:

> This Court initially held, in ruling on Dr. Sanchez's motion to dismiss, that Plaintiff had pled a defamatory statement. Now, however, the Court has the benefit of testimony from both Plaintiff and her husband, as well as statements from the only three (3) people who overheard the comment. Plaintiff and her husband have both testified that no one believed Plaintiff had engaged in sex with anyone to obtain her degrees.

[81] at p. 12.

In the following paragraph, he then appears to address the actionability of his version of the question:

> Most importantly, Dr. Sanchez himself testified that he meant nothing sexual by his questions. Dr. Sanchez literally asked about where Plaintiff had slept and whose jacket she was wearing. His testimony was clear that he was relying upon a Spanish phrase and did not know that the phrase had any sexual connotation in English.

*Id*.

8

The Court finds that this unclarity favors denial of Sanchez's Motion [80] because, as the moving party, he "bears the initial responsibility of informing the district court of the basis for [his] motion[.]" *Nabors*, 2019 WL 2617240 at *1 (internal quotation marks and citations omitted). Nonetheless, viewing this disputed fact in light most favorable to Alexander as the nonmoving party, the Court will analyze the first element of the claim based on her version of Sanchez's question. It will consider Sanchez's arguments as applicable to Alexander's version of the phrase.

As noted above, the first element of slander requires "a false statement that has the capacity to injure the plaintiff's reputation." *Fagan*, 396 So. 3d at 1117. "Subject to our normal standards, the question [of] whether [the] said-to-be-offending words are defamatory may be decided by the Court without submission to the trier of fact." *Pope v. Martin*, 354 So. 3d 362, 376 (Miss. Ct. App. 2023) (quoting *Perkins v. Littleton*, 270 So. 3d 208, 216 (Miss. Ct. App. 2018)) (internal quotation marks omitted).

"For the insulting statement to be considered defamatory, it must go beyond mere swearing and insult and into the realm of factual misstatement." *Fagan*, 396 So. 3d at 1117 (citations omitted). "Further, 'the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.'" *Id.* (quoting J*ohnson v. Delta-Democrat Publ'g Co.*, 531 So. 2d 811, 814 (Miss. 1988)). "If the reader must struggle to see how and whether they defame, by definition the words are not defamatory in law." *Pope*, 354 So. 3d at 376. In the context of defamation, the Court must consider "[t]he said-to-be-offending words. . . in the context of the entire utterance. Their complexion draws color from the whole." *Lawrence v. Evans*, 573 So. 2d 695, 698 (Miss. 1990).

Sanchez argues that his question was not defamatory for two reasons. First, he generally argues that any defamatory connotation is not clear and unmistakable from the words themselves

and is therefore not actionable. Second, he contends that his question was not defamatory because Alexander suffered no damage to her reputation. The Court will address these arguments together as their substance overlaps.

Relevant to Sanchez's arguments, Alexander maintains the position that the question "'Who did you sleep with to get that title, your degree?' rises to the level of [d]efamation as it is… implicative of sexual impropriety[.]" [85] at p. 26. For his part, Sanchez argues that his "question cannot be defamatory when no one who heard it believed that Plaintiff, in fact, earned any degree by engaging in sexual intercourse with anyone." [81] at p. 12. The Court finds Sanchez's argument misplaced.

It is true that the Mississippi Supreme Court has held that "[w]hen a statement is reasonably capable of several meanings, some of which would be defamatory and some would not, the burden is on the plaintiff to prove that it was reasonably and properly understood by the person or persons to whom it was published as having a defamatory meaning." *Fagan*, 396 So. 3d at 1118 (quoting *Taylor v. Standard Oil Co.*, 184 Miss. 392, 186 So. 294, 296 (1939)). Importantly, however, Sanchez fails to argue that his question is "capable of several meanings, some of which would be defamatory and some would not[.]" *Id.*

In his Memorandum [81], Sanchez does not articulate how or why the defamatory meaning attributed to the question by Alexander is not clear from the words themselves. Instead, he focuses on *his* intent in making the question but does not explain how his intent is relevant to the *meaning* of the question itself. In this regard, he argues that there is no "indication that [he] intended to convey the ridiculous idea that [Alexander] had obtained her doctorate degree by sleeping with anyone" and that he "himself testified that he meant nothing sexual by his questions." [81] at p. 13. His intent is simply not relevant to the issue at hand. *See Fagan*, 396 So. 3d at 1118 (explaining

10

that the trial court "erroneously relied on [the defendant's] intent behind making the statement" to conclude its defamatory meaning). Notably, despite emphasizing his alleged lack of ill intent, he cites no authority to indicate that the same is relevant. The Court must look to the words themselves in making its determination. *See Lawrence*, 573 So. 2d at 698.

Absent argument, the Court cannot assume that the question is capable of several meanings, some defamatory and some not, and only consider how the hearers understood the question. In *Asbury*, the District Court for the Southern District of Mississippi relatively recently rejected the same argument Sanchez raises in this case in addressing a defamation claim on summary judgment. In that case, the court provided the following analysis, which this Court finds persuasive:

> [Defendant] essentially argues the statements were not defamatory because [Plaintiff] suffered no reputational harm. *Id*. But Mississippi law does not require [Plaintiff] to show that a statement damaged its reputation for that statement to be defamatory. Instead, the Mississippi Supreme Court defines "a defamatory statement as '[a]ny written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community.'" *Journal Publ'g Co. v. McCullough*, 743 So. 2d 352, 360 (Miss. 1999) (quoting *Fulton v. Miss. Publishers Corp.*, 498 So. 2d 1215, 1216 (Miss. 1986)) (alteration in original). To be defamatory, a statement does not have to injure a plaintiff's reputation, but only be of the type which would ordinarily injure reputation. *Id*.

*Asbury Auto. Grp., Inc. v. Gooding*, 2021 WL 3572669, at *6 (S.D. Miss. Aug. 11, 2021).

Consistent with this explanation, the Court also notes that the first element of slander only requires that the statement have "the *capacity* to injure the plaintiff's reputation[.]" *Fagan*, 396 So. 3d at 1117 (emphasis added). Sanchez simply raises no argument that his question does not have the capacity to injure Alexander's reputation or that it is not "of the type which would ordinarily injure [her] reputation." *Asbury*, 2021 WL 3572669 at *6.

In *Fagan*, the Mississippi Supreme Court looked to the dictionary meaning of a vulgar word to determine whether it constituted actionable defamation in light of its common use. *Fagan*, 396 So. 3d at 1118. Though that case involved name-calling, which is different from this case, this Court also turns to the dictionary meaning of certain words contained within Sanchez's question. The Merriam-Webster dictionary defines the phrase "sleep with" as "to have sex with (someone)."[8] Thus, viewing Sanchez's question in light most favorable to Alexander, it can only be construed as suggesting that Alexander engaged in sex to obtain her Doctor title or, stated differently, that she slept her way into obtaining her Doctor title. Again, when Sanchez asked the question, it is undisputed that the parties were in their employment setting and standing next to a nursing station. It is undisputed that Alexander has a Doctorate of Nursing Practice and was, during the relevant time, employed as a Director of Inpatient Nursing at Baptist. In the Court's view, given its clear meaning, the phrase would tend to injure Alexander's reputation in the context in which it was spoken because it conveys a want of integrity and sexual impropriety pertaining to how she obtained her professional title. The Court finds that it is capable of "diminish[ing] the esteem, respect, goodwill or confidence in which… [Alexander] is held, or to excite adverse, derogatory or unpleasant feelings or opinions against [her]." *Fagan*, 396 So. 3d at 1117. Speculation is simply not needed for Sanchez's words to be attributed a defamatory meaning in this case. A jury could plausibly reach this conclusion without speculation.

### B. *Unprivileged Publication*

The second element of a slander claim requires: "an unprivileged publication, i.e., communication to a third party[.]" *Fagan*, 396 So. 3d at 1117. Sanchez does not contest that his

---

[8] "Sleep with." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/sleep%20with. (last visited May 15, 2026).

question was made in the presence of third parties. However, he argues that Alexander's claim

fails because his question was privileged.

The Mississippi Supreme Court has defined qualified privilege as:

> A communication made in good faith and on a subject matter in
> which the person making it has an interest, or in reference to which
> he has a duty, is privileged if made to a person or persons having a
> corresponding interest or duty, even though it contains matter which
> without this privilege would be slanderous, provided the statement
> is made without malice and in good faith.

*Inland Fam. Prac. Ctr., LLC v. Amerson*, 256 So. 3d 586, 591 (Miss. 2018).

"The qualified privilege operates as an affirmative defense to defamation." *Id.*[9] "On

summary judgment, as at trial, the burden of proving that the qualified privilege attached to the

communication falls on the [party] asserting it as a defense[.]" *Id.*[10]

In his Memorandum [81], Sanchez argues that he "had an interest in why Plaintiff was

wearing a coat that proclaimed Plaintiff to be a 'Dr.' when Plaintiff did not possess a medical

degree." [81] at p. 18. He further argues that "[i]t would be within [his] duty to confirm that

Plaintiff did not misrepresent her qualifications to the patients and to other hospital staff who may

not have immediately known Plaintiff's degrees and educational background." *Id*. The Court easily

rejects this argument for several reasons.

First, in order for Sanchez to avail himself of this privilege, his communication must have

been made on a "subject matter" in which he had an interest or "in reference" to which he had a

duty. *Inland*, 256 So. 3d at 591. Having determined the meaning of Sanchez's question ("Who did

---

[9] "If the statement is privileged, the second element cannot be met unless the privilege is overcome by a showing of malice, bad faith, or abuse." *Id.* at 590.

[10] Though Alexander does not raise the issue, the Court notes that Sanchez raises this defense for the first time at this late stage of the litigation and that he did not assert this affirmative defense in his Answer [9] as required by Rule 8 of the Federal Rules of Civil Procedure. *See* [9] at p. 1. Notwithstanding this potential waiver issue, the Court will address the parties' arguments on the merits.

you sleep with to get that title, your degree?"), it is clear that the subject matter of the communication pertains to how Alexander obtained her professional title. Notably, Sanchez does not argue otherwise. He also raises no argument that he had an interest in or duty associated with that subject. Though he contends that he was inquiring about the reason Alexander's scrub coat said "Dr." and that he had a duty to confirm that she was not misrepresenting her qualifications, the question simply does not concern either of those things. In other words, nothing about this question directly addressed whether Alexander actually held a Doctorate degree. The Court reiterates that, as the moving party, Sanchez bears the burden of setting forth the basis for summary judgment in his favor. The Court finds that he has not met his burden for this reason alone.

Notwithstanding this finding, the Court notes that Sanchez points to no competent summary judgment evidence to support his qualified privilege defense. During his deposition, Sanchez testified that when Alexander approached him at the nursing station he noticed that her scrub "stated, like, [a] medical degree, Dr. Alexander." [80], Ex. 1 at p. 59. He further testified that he was aware of the medical community given that he had worked for Baptist for some time "[s]o [he] was a little bit confused." *Id.* Though he concedes that he "was incorrect about the meaning of the 'Dr.' on [Alexander's] coat" in his Memorandum [81], at no point in his deposition did Sanchez testify that he was attempting to confirm Alexander's title or to clarify any misrepresentation associated with her title.

Having addressed these points out of an abundance of caution, the Court now turns to the fourth element.

### C. *Special Harm*

As noted above, Sanchez also argues that Alexander cannot satisfy the fourth element. This element requires plaintiffs to prove that either (a) they experienced "special harm," which is "the

14

loss of something having economic or pecuniary value" or (b) that the defendant's actions constituted slander *per se*. *Speed*, 787 So. 2d at 632. Slander *per se* does not require proof of special damages because "the law presumes that one who has been defamed in certain ways has necessarily suffered damage arising from his wounded feelings and diminished reputation." *Cook v. Wallot*, 172 So. 3d 788, 798 (Miss. Ct. App. 2013) (quoting *McFadden v. U.S. Fid. & Guar. Co.,* 766 So. 2d 20, 23 (Miss. Ct. App. 2000)).

The parties do not dispute that Alexander sought mental health treatment and that she was prescribed medication following the interaction with Sanchez. In her Response Memorandum [85], Alexander argues that she incurred "damages associated with [her] medical treatment, pharmaceutical costs, and lost work time associated with the impact Dr. Sanchez's statement made upon her person." [85] at p. 29. In support of her argument, Alexander submitted abstracts of insurance benefits paid for counseling services and pharmaceutical expenses. *See generally* [84], Ex. 3-4.

In his Reply [88], Sanchez acknowledges that Alexander "spends a great deal of time discussing her counseling records and the cost of her anxiety medications" but reiterates that no evidence of actual harm to Alexander's reputation exists. [88] at p. 4. Of importance, Sanchez does not dispute that Alexander has nonetheless provided some evidence of special harm in the form of her medical and pharmaceutical expenses. However, the Court notes that the parties appear to dispute whether Alexander's alleged emotional distress was caused by the interaction with Sanchez. For context, it is undisputed that Alexander failed to disclose other potentially stressful events that occurred in her life to her therapist and only cited the incident involving Sanchez at her counseling sessions. Though the details of those other events may be relevant at trial, for purposes of this stage of the proceedings, the Court finds that Alexander has come forward with sufficient

15

evidence to create a question of fact as to whether she suffered special harm caused by Sanchez's question. Again, Sanchez does not dispute that Alexander incurred economic expenses and that the sole subject of her mental health treatment was the interaction involving him. Viewing this fact in light most favorable to Alexander, a jury could conclude that she suffered special harm resulting from his question.

In sum, the Court finds that summary judgment is not appropriate as to Alexander's defamation claim.[11]

<em>Conclusion</em>

For the reasons set forth above, Sanchez's Motion for Summary Judgment [80] is DENIED. Alexander will be permitted to proceed to trial on her defamation claim.

SO ORDERED, this the 22nd day of June, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[11] As a final matter, the Court notes that Sanchez raises some argument that his question does not constitute slander *per se*. In light of the Court's finding that a question of fact exists pertaining to special harm, an alternative way of proving the fourth element of a defamation claim, it need not address those arguments as the outcome would remain unchanged.